WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph Kwaku Boateng,<br><br>              Petitioner,<br><br>v.<br><br>Eric H. Holder, Jr.,<br>United States Attorney General,<br><br>              Respondent. | No. CV13-00631-PHX-DGC<br><br>**ORDER** |

At the direction of the Ninth Circuit Court of Appeals, the Court held a *de novo* hearing on the citizenship claim of Petitioner Joseph Kwaku Boateng. For reasons that follow, the Court concludes that Petitioner is not a United States citizen by birth.

**I.      Background.**

On February 5, 2010, the Department of Homeland Security commenced removal proceedings against Petitioner by filing a Notice to Appear in Immigration Court. *See* Certified Administrative Record ("AR") at 505-07. Petitioner appeared before an Immigration Judge and claimed to be a citizen of the United States by birth. AR 122. On January 24, 2011, the Immigration Judge found that Petitioner was not a citizen of the United States and ordered him to be removed to Ghana. AR 73-108. Petitioner appealed to the Board of Immigration Appeals, but the Board dismissed the appeal. AR 2-4. Petitioner petitioned the Ninth Circuit Court of Appeals to review the Board's decision. *See Boateng v. Holder*, Doc. 11-72044 (9th Cir). On September 8, 2012, the Ninth Circuit found that there was a genuine issue of material fact regarding Petitioner's

1 citizenship, and transferred the petition to this Court for a *de novo* hearing pursuant to 8
2 U.S.C. § 1252(b)(5)(B). *Id.*

3       Due to a docketing or transmission error, the Ninth Circuit's decision was not
4 received in this Court until March 27, 2013. The Court held a status conference on
5 May 2, 2013, to consider the procedures to be followed in resolving the citizenship issue.
6 Petitioner appeared in person at the conference and stated that he would call no
7 witnesses, but would instead present documents and declarations to show that he was
8 born in the United States. Petitioner identified no other basis for his claim of citizenship.
9 Doc. 34. The Court established a schedule for submission of the documentary evidence
10 and memoranda. Doc. 34. After documents had been submitted and the parties had
11 conducted necessary discovery (Doc. 43), Petitioner again confirmed at a status
12 conference on September 12, 2013, that he planned to call no witnesses.

13       The Court held the evidentiary hearing on September 18, 2013. Petitioner and
14 defense counsel discussed the evidence submitted with their memoranda. When told by
15 the Court that his affidavit was inadmissible hearsay, Petitioner testified briefly.

16       Petitioner is intelligent, articulate, and understands the disputed facts and their
17 legal significance. Petitioner earned a bachelor's degree in electrical engineering from
18 the University of Alabama and completed all but one year of a master's program in
19 electrical engineering. Petitioner's papers are well-written, and he was able to make
20 evidentiary objections and constitutional arguments in his briefs and at the hearing.

21 **II.     Legal Standard.**

22       A person born in the United States is a citizen of the United States.
23 8 U.S.C. § 1401(a). If a petitioner claims to be a citizen of the United States in a petition
24 for review of a removal order, and if a court of appeals finds that a genuine issue of
25 material fact exists concerning the petitioner's citizenship, the court of appeals must
26 transfer the proceeding to a district court for a *de novo* hearing on the citizenship claim.
27 The proceeding in the district court is treated as if it were brought under the Declaratory
28 Judgment Act. 8 U.S.C. § 1252(b)(5)(B).

1  Petitioner bears the initial burden of producing "substantial credible evidence in
2  support of his citizenship claim," and the government then bears the "ultimate burden" of
3  proving that Petitioner is removable by clear and convincing evidence. *Mondaca-Vega v.*
4  *Holder*, 718 F.3d 1075, 1081 (9th Cir. 2013) (citing *Ayala-Villaneuva v. Holder*, 572
5  F.3d 736, 737 n.3 (9th Cir. 2009)). "The allocation of the initial burden of proof flows
6  from the nature of the proceeding. In the *de novo* hearing in district court, the citizen is
7  in the position of a plaintiff seeking a declaratory judgment." *Sanchez-Martinez v. INS*,
8  714 F.2d 72, 74 n.1 (9th Cir. 1983).

9  The Court will set forth its findings of fact and conclusions of law separately, as
10 required by Federal Rule of Civil Procedure 52(a)(1). The findings of fact necessarily
11 will include a discussion of evidentiary issues. Because this is essentially a bench trial on
12 a declaratory judgment action, the Federal Rules of Evidence apply. *See* Fed R. Ev.
13 1101(b).

**III.   Findings of Fact.**

   **A.   Petitioner's Evidence.**

Petitioner proffered seven documents to show that he was born in Orleans Parish, Louisiana, on June 1, 1966: (1) A "Statutory Declaration" signed under Ghanaian law by Petitioner's mother, stating simply that he was born in "Orlens [sic] Parish Louisiana, United States." Doc. 36 at 13. (2) A Certificate of Baptism issued by the Catholic Diocese of Accra, Ghana, which identifies Petitioner's place of birth as "Orleans Parish, Louisiana, U.S.A." Doc. 36 at 18. (3) Medical records issued by Ghana Health Service. Doc. 36 at 20. An immunization card included in the records bears Petitioner's name and, under a line labeled "clinic," includes the words "Orleans Parish Louisiana." *Id*. 36 at 20. (4) A certified copy of an abstracted admissions record from Calhoun Community College. Doc. 36 at 23. The admission record bears Petitioner's name and identifies his birth place as "Orleans Parish, La." *Id*. (5) A document titled "Cumulative Record for Basic Education Schools" which bears Petitioner's name and identifies his place of birth as "Orleans Parish Louisiana, U.S.A." Doc. 36 at 26. (6) A voter registration card issued

1 by the State of Alabama which bears Petitioner's name and identifies his place of birth as
2 "N. Orleans."  Doc. 36 at 16.  *Id*.  (7) An affidavit signed by Petitioner and stating that he
3 was born on June 1, 1966, at Orleans Parish, Louisiana, at home, attended by a midwife.
4 The affidavit names Petitioner's parents and states that he was taken back to Ghana as a
5 baby and completed his primary and secondary education there.  Doc. 36 at 32-33.

6         **B.**        **The Government's Objections to Petitioner's Evidence.**

7 The government moves to exclude all of Petitioner's documents as hearsay.
8 Doc. 45 at 2.  The Court will address the government's arguments.

9 Petitioner contends that the statutory declaration of his mother is admissible under
10 the hearsay exception for "statements of personal or family history."  Fed. R. Ev.
11 804(b)(4).  For this exception to apply, however, Petitioner's mother must be
12 "unavailable," meaning that she must be "absent from the trial or hearing" and that
13 Petitioner "has not been able, by process or other means, to procure" her testimony.  Fed.
14 R. Ev. 804(a)(5)(B).  Even if Petitioner's mother could not afford to travel from Ghana as
15 Petitioner contends, the government argues that she voluntarily signed a declaration and
16 therefore could have voluntarily testified at trial remotely or given a deposition by phone.
17 The Court agrees.  To show his mother unavailable for purposes of Rule 804(b)(4),
18 Petitioner must show that her "attendance *or testimony*" could not be procured "by
19 process or other reasonable means."  *Id*.  Federal Rule of Civil Procedure 43(a) permits
20 trial testimony by contemporaneous transmission from a different location, and Rule
21 30(b)(4) permits depositions by phone.  The phone records submitted by the government
22 and discussed below show that Petitioner is in telephone contact with his mother
23 (Doc. 54), and yet Petitioner made no effort to secure her remote testimony or a phone
24 deposition, and never asked the Court for help in doing so.  As one prominent
25 commentator has explained, "[w]hen the hearsay at issue concerns . . . a statement of
26 personal or family history, the proponent must not only attempt to compel attendance of a
27 witness, but also must attempt to depose the witness."  Vol. 4, Jack B. Weinstein &
28 Margaret A. Berger, *Weinstein's Federal Evidence*, § 804.03[6][c] (Matthew Bender 2d

ed. 2013). Because Petitioner has not shown his mother to be unavailable within the meaning of Rule 804, her declaration is inadmissible hearsay.

Petitioner argues that the Certificate of Baptism, the medical records, the admission record from Calhoun Community College, the Ghana school records, and the Alabama voter registration card are all business records under Rule 803(6), but none of these documents is accompanied by testimony of a custodian or other qualified witness, or by a certificate that complies with Rule 902(11), as required by Rule 803(6)(D). In addition, none of these documents qualifies as a public record under Rule 803(8) because none sets forth Petitioner's birth date as part of a public office's activities, states that Petitioner's birth place was observed while under a legal duty to report, or states that the birth place was determined during a legally authorized investigation. Fed. R. Ev. 803(8)(A)(i)-(iii). Moreover, as discussed below, there are serious reasons to doubt the trustworthiness of several of these documents. Fed. R. Ev. 803(8)(B).

Petitioner argues that the Certificate of Baptism, medical records, and school records constitute ancient documents under Rule 803(16), but none of them is accompanied by a custodial certification as required in Rule 902(12) or by any other means of authentication. Because these documents are not records "whose authenticity is established" as required by Rule 803(16), they are not admissible as ancient documents.

There are additional reasons to question the veracity of Petitioner's documents. As to the Certificate of Baptism, the Petitioner submitted a different "baptism testimonial" to the State of Louisiana when he attempted to obtain a delayed birth certificate. Doc. 45-1 at 8-9 (certified record from Louisiana Department of Health and Hospitals, Center for Records and Statistics). The baptismal testimonial states that Petitioner was baptized at St. Thomas Church on February 11, 1977, by Father E-B Koonisan (*id*. at 9), while the Certificate of Baptism states that he was baptized at Saint Thomas More Church on July 10, 1977, by Father Dominic Amliaw (Doc. 36 at 18). Petitioner asserted in his reply and again at oral argument that both documents are authentic because he was baptized twice, but Petitioner does not explain why he

submitted one document to the State of Louisiana and another to this Court, with no explanation until challenged that he was baptized twice. This Court also notes that the handwriting on the Certificate of Baptism looks suspiciously like Petitioner's handwriting on the other documents. *Compare* Doc. 36 at 18 *with* Doc. 45-1 at 11.

The Ghana school records also include suspicious information. Petitioner asserted in his reply and during oral argument that the school records are more than 20 years old. Doc. 48 at 9. In fact, they purport to be Petitioner's primary school records from 1973 to 1977, when he was seven to eleven years old. The old age of these records seems unlikely, however, given that they say Petitioner's father died on December 7, 2004. Doc. 36 at 27. Petitioner claims that the records were updated when his mother obtained them from his former primary school, but it seems unlikely that a school would possess primary school records more than 35 years old. And even if the school keeps records for decades after children departed, it seems highly unlikely that the school would have any reason to "update" the record with the father's death date when a copy was requested in 2012 or 2013. Equally suspicious is the fact that the handwriting for his father's death date appears identical to the handwriting elsewhere in the document. *See* Doc. 36 at 27.

Petitioner's exhibits include other anomalies. In at least two, it appears that Petitioner's place of birth has been forced into portions of the document that do not call for that information. In the school record, "Orleans Parish, Louisiana" is written into the space for "Hometown." Petitioner does not claim that his hometown was in Louisiana when he was attending primary school in Ghana. Similarly, "Orleans Parish Louisiana" is written into the health charts in the space for "clinic." These appear to be rather obvious efforts to make seemingly old records reflect Petitioner's claimed place of birth.

### C. The Government's Evidence.

The government offered evidence to undercut Petitioner's submissions and to show that he was not born in the United States. As described above, the government submitted a baptismal testimonial that is inconsistent with the Certificate of Baptism submitted by Petitioner. Doc. 45-1 at 8. The government also supplied the complete

1   application submitted by Petitioner to Calhoun Community College (Petitioner presented
2   only an abstract of the application).  Doc. 45-1 at 11.  The application identifies
3   Petitioner's birthplace as "Lafayette Parish." *Id*. at 11.  When seeking to obtain a delayed
4   birth certificate, Petitioner submitted to the State of Louisiana three different versions of
5   the abstract of the Calhoun application and two different versions of the Calhoun
6   application itself. *Id*. at 14-22.  Petitioner appears to have altered the original application
7   ("Lafayette" is crossed out in one version and entirely whited out in another) to show his
8   birthplace as "Orleans Parish." *Id*.  These documents cast serious doubt on the reliability
9   of the information contained in Petitioner's Calhoun abstract.

10   The government produced an authenticated application for a Social Security card
11   submitted by Petitioner on June 6, 1990.  Doc. 46-1 at 3.  In the application, Petitioner
12   lists his place of birth as "Accra, Ghana," and he presented a Ghanaian passport, an I-94
13   form, and an F-1 student visa as proof of his identity. *Id*. at 4.  Petitioner now argues that
14   he did not submit the application, but he admitted in his deposition that his Social
15   Security number is 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, the very number that resulted from the application. *Id*.
16   at 21.  The government also produced an application Petitioner filed for a replacement
17   Social Security card.  The application lists Petitioner's Social Security number and
18   identifies his place of birth as "Accra, Ghana." *Id*.  Petitioner admitted in a deposition
19   that the address listed on this application was his previous address. *Id*. at 48.  To prove
20   his identity on this application, Petitioner submitted the Texas identification card
21   discussed below. *Id*. at 5.

22   The government introduced an authenticated application Petitioner submitted to
23   the Texas Department of Public Safety on August 31, 1994, for an identification card.
24   Doc. 46-1 at 75.  The application lists Petitioner's place of birth as "Koforidua, Ghana,"
25   and he presented a Ghanaian passport to prove his identity. *Id*.  The photograph in the
26   Texas identification card appears to be Petitioner. *Id*. at 77.

27   The government also submitted Petitioner's authenticated application for an
28   Alabama driver's license. *Id*. at 81.  The government notes that Petitioner presented a

passport with an I-94 form to prove his identity, which he "could not have had unless he previously presented himself as an alien upon his entry into the United States." Doc. 46 at 8.

The government produced an authenticated application that Petitioner submitted to Tuskegee University in March of 1988, in which Petitioner lists his place of birth as "Accra, Ghana." *Id*. at 91. An admissions officer at the University filled out and signed a Form I-20 Certificate of Eligibility for Non-Immigrant (F-1) Student Status on Petitioner's behalf, and Petitioner's place of birth again was stated as "Accra, Ghana." *Id*. at 93. Petitioner certified that the information in the form was correct. *Id*. Petitioner admitted in his deposition that he attended Tuskegee University. *Id*. at 33. The Form I-20 contains an admission number that matches the I-94 number that was presented for Petitioner's Social Security card. *Id*. at 93, 4.

The government also introduced an authenticated application for lawful permanent residence in the United States submitted by Petitioner's father, Michael Yaw Boateng. Doc. 46-1 at 86. Petitioner's father certified under penalty of perjury that Petitioner was born in Ghana. *Id*. at 87.

Finally, the government presented recordings of Petitioner's phone calls from the detention center where he is now held. Doc. 54. In the recordings, Petitioner contacts various family members and requests that they procure documents from various sources in Ghana to help prove that Petitioner was born in the United States. With respect to the medical records, Petitioner instructs that a doctor should sign the record, it should bear Petitioner's name, "they should place the stamp of the clinic on it," and that the record should show immunizations in "about" November of 1967 because "[t]hat is the date when they prepared, they prepared the card." Doc.54 at 17, 20.[1] Petitioner adds that the record should show his birthdate as June 1, 1966, explaining "[t]hat is my birth date, so they should not change it." *Id.* at 20. Petitioner's brother expresses concern about the

---

[1] Citations are to page numbers affixed to the top of the page by the Court's CMECF system, not to numbers at the bottom of the page.

- 8 -

cost of this document, stating that "you have already spent about fifteen hundred on the other one," but Petitioner states that his brother should send their mother another "four hundred." *Id.* at 13, 19.

In another call, Petitioner speaks to his mother about the school records, referring to them as "the one you prepared and sent to me." *Id.* at 47. Petitioner notes that someone named "Mampongteng" "wrote hometown on it. Instead of writing place of birth on it, he wrote hometown on it." *Id.* The school records, as discussed above, have a printed box for "Hometown" in which someone has written "Orleans Parish Louisiana." Doc. 36 at 26. Petitioner's telephone comments suggest that this form was prepared with the aid of his mother and someone named Mampongteng, rather than being an authentic record of Petitioner's schooling more than 35 years ago.

These translated calls further undercut the reliability of the documents submitted by Petitioner. At the September 12, 2013, status conference, Petitioner stipulated that the recordings of his calls were authentic.[2]

### D.   Petitioner's Evidentiary and Constitutional Objections.

Petitioner objects to the government's documentary evidence on relevance and hearsay grounds. The Court agrees that the application for an Alabama driver's license (Doc. 46-1 at 81) is not particularly probative. When asked if Petitioner would have needed to enter the United States with an I-94 form and a Ghanaian passport even if his assertions were true – that he was born in the U.S. and later taken to Ghana – the government's counsel did not know.

The other documents are clearly relevant, and the Court concludes that they are not barred by the hearsay rule. The government provided certificates from the relevant public officials for each document in satisfaction of the public records exception. Fed. R.

---

[2] Petitioner offered this stipulation when the Court and counsel for the government discussed a possible two-month delay in the evidentiary hearing due to the government's need to produce a witness to authenticate the phone recordings and the Court's intervening trial schedule. In addition to this authentication by stipulation, the government submitted a certificate from an Immigration Services translator that the transcript is a correct translation of Petitioner's recorded calls. Doc. 54 at 8.

Ev. 803(8). Any second layer of hearsay is cured because the relevant statements in the documents were made by Petitioner and thus are opposing party statements under Rule 801(d)(2). In the case of the application for permanent residence submitted by Petitioner's father, the sworn statements of Petitioner's father are admissible as "statements of personal or family history," and Petitioner's father is unavailable because he is dead. Fed. R. Ev. 804(a)(4).

Petitioner objects to the introduction of the phone recordings, asserting that they were obtained in violation of his Fourth Amendment rights. Because the exclusionary rule does not apply to civil cases, including deportation hearings, Petitioner's constitutional challenge does not prevent the Court from considering the phone recordings. *See INS v. Lopez-Mendoza*, 468 U.S. 1032, 1050-51 (1984).

In addition, the Fourth Amendment is not triggered unless the government intrudes into an area "in which there is a 'constitutionally protected reasonable expectation of privacy.'" *Katz v. United States*, 389 U.S. 347, 360 (1967). Such an expectation exists only if (1) Petitioner has an "actual subjective expectation of privacy" in the place searched, and (2) society is objectively prepared to recognize that expectation. *United States v. Davis*, 932 F.2d 752, 756 (9th Cir. 1991). Although Petitioner claims he had a subjective expectation of privacy in calls he made from the detention facility, Petitioner knew of the detention center's policy to record phone calls. Petitioner acknowledged that each phone call had an automated message informing the participants that calls were monitored. Petitioner also admitted during the hearing that he received a handbook informing him that his phone calls could be recorded. If Petitioner knew that the government was monitoring his calls, he could not have subjectively expected privacy. And even if Petitioner believed his calls were private, the Ninth Circuit has held that society is not prepared to recognize that expectation. *See United States v. Van Poyck*, 77 F.3d 285, 291 (9th Cir. 1996) ("We hold that any expectation of privacy in outbound calls from prison is not objectively reasonable and the Fourth Amendment is therefore not triggered by the routine taping of such calls.").

### E. Evaluation of the Evidence.

After the evidentiary objections are considered, all that remains of Petitioner's evidence is his brief testimony at the hearing that he was born in New Orleans, Louisiana. Petitioner provided no details of his birth or the basis for his knowledge that he was born there. His bare statement falls far below the "substantial credible evidence" threshold required to shift the burden to the government. *See Mondaca-Vega*, 718 F.3d at 1081.

Even if the Court were to consider the declaration of Petitioner's mother, it would reach the same conclusion. She too states only that Petitioner was born in Louisiana. She provides no explanation of how or why she was in the United States in 1966, no details of Petitioner's birth, and no explanation of why or when she returned to Ghana.

In *Mondaca-Vega*, the petitioner made the threshold showing required in a case of this type by proving that his wife and foreign-born children had been granted derivative citizenship through him and that the Secretary of State had issued him a United States passport. *Id*. at 1078. Petitioner has provided no comparable evidence. Petitioner stated during the status conferences that he has family members in the United States, but none of them appeared to provide evidence. Moreover, Petitioner produced no evidence to support his assertion that his mother lived in the United States when he was born – no housing, employment, education, or tax records concerning his mother's alleged stay here, no photographs, and no evidence from his other living family members. The uncorroborated testimony of Petitioner, and his mother's hearsay declaration if it were considered, do not constitute substantial evidence.

Even if the Court found that Petitioner had met his initial burden, the government has produced clear and convincing evidence to rebut Petitioner's claim. The documents submitted by the government show that Petitioner repeatedly identified himself as a Ghanaian by birth. The government's submissions also strongly suggest that Petitioner falsified records submitted to the Court and other records previously submitted to the States of Alabama and Louisiana. Petitioner has provided no explanation for how he arrived in the United States if not with the student visa of a man from Ghana with the

same name and born on the same day as Petitioner. Because the government successfully undermined the evidence Petitioner submitted, and also marshaled sufficient evidence to clearly convince the Court that Petitioner was born in Ghana, the government's documentary submissions meet the clear and convincing standard.

The phone recordings only buttress the Court's conclusion that Petitioner was not born in the United States. The recorded phone conversations show that Petitioner and his family sought to create documents to prove his citizenship.

**IV.   Conclusion of Law.**

Petitioner has failed to present substantial credible evidence that he was born in the United States, and the government has shown otherwise by clear and convincing evidence. Petitioner therefore is not a United States citizen by virtue of birth in this Country.

**IT IS ORDERED:**

1. Petitioner is not a citizen of the United States by birth.
2. The Clerk shall file a copy of this order with the Ninth Circuit Court of Appeals.

Dated this 24th day of September, 2013.

_David G. Campbell_
United States District Judge